Avram E. Frisch, Esq.
The Law Office of Avram E. Frisch LLC
1 University Plaza, Suite 119
Hackensack, NJ 07601
201-289-5352
frischa@avifrischlaw.com
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

--------------------------------------------------------------- x

**A.F. AND A.F. O/B/O S.F.**

                    Plaintiff,

- against -

**TEANECK BOARD OF EDUCATION**

                    Defendant.

Docket No.

**COMPLAINT**

--------------------------------------------------------------- x

**COMPLAINT**

Plaintiff, A.F. and A.F. o/b/o S.F., by way of complaint against Defendant, Teaneck Board of Education, alleges and says:

**JURISDICTION AND VENUE**

1. This action is an appeal of the determination of Judge Susanna Guerrero of the New Jersey Office of Administrative Law as provided in 20 U.S.C. §1415(i)(2). Related claims enforcing the terms of a prior settlement agreement between the parties and claims for religious discrimination also constitute a portion of this action.

2. This court has jurisdiction pursuant to 20 U.S.C. §1415(i)(2), and pursuant to 28 U.S.C. §1331, granting the court jurisdiction over civil actions arising out of the laws of the United States.

3. This Court also has jurisdiction over related state law claims pursuant to 28. U.S.C. § 1367.

4. Venue is properly laid in the District of New Jersey, pursuant to 28 U.S.C. § 1391(b) as Defendants reside in this district and all of the events or omissions giving rise to plaintiffs' claims occurred within this district.

## THE PARTIES

5. Plaintiff, A.F. and A.F. o/b/o S.F., is a minor child acting by and through her parents, A.F. and A.F.. Plaintiff's address is omitted to preserve the privacy of the minor child.

6. Defendant, Teaneck Board of Education ("Board") upon information and belief, has its principal place of business at 651 Teaneck Road, Teaneck, New Jersey, 07666.

## FACTUAL BACKGROUND

7. This action arises out of the failure of the Board to provide a free and appropriate public education for Plaintiff, S.F. for the 2023-2024 school year, resulting in the unilateral placement of S.F. by her parents, A.F. and A.F. in the Shefa School in New York City.

8. S.F. was first enrolled in the Teaneck Public School system for the 2021-2022 school year, and was assigned to the Whittier School in Teaneck.

9. After developing an IEP for S.F., her parents determined that the IEP was insufficient to ensure a FAPE and unilaterally placed her at the Shefa School.

10. Thereafter, A.F. and A.F. commenced a due process proceeding with the New Jersey Department of Education, Office of Special Education ("OSEP"), which referred the matter to the New Jersey Office of Administrative Law for adjudication ("OAL").

11. Prior to a fact hearing, the parties settled for the 2021-2022 and 2022-2023 school years and entered into a written settlement agreement.

12. Pursuant to that agreement, the Board agreed to a total payment of $120,874.04 for the two years, and to develop a new IEP in the spring of 2023 for the 2023-2024 school year for placement in an approved out of district private school in the State of New Jersey.

13. In February 2023, Plaintiffs contacted the Board to conduct all necessary reevaluations and formulate the IEP required by the Settlement Agreement.

14. Despite the requirements of the Settlement Agreement, the Board formulated an IEP for the Whittier School, and then attempted to locate a private school that would fit the IEP.

15. Due to the Board's delays, the IEP was not proposed until May 17, 2023, and it had no relationship to any proposed private school.

16. Recognizing that the agreement required the attempt to place in an out of district private school, the Board suggested touring some schools.

17. Throughout the process, the Board, acting through its case manager, Amy Morik, refused to meaningfully interact with parent concerns, and simply noted them for the file and ignored all such concerns.

18. The parents visited several schools and the district program and made substantive comments as to why they were concerned about the schools and the potential transition to a new school for a child with severe anxiety, ADHD, and learning disabilities.

19. The case manager ultimately listed these concerns in the IEP, but took no steps to allay any of the concerns.

20. Despite concerns from S.F.'s treating psychiatrist, the Case Manager demanded a revised letter that did not reference his professional opinion that remaining at the Shefa School was the appropriate placement for S.F.

21. Further, in a phone conversation with the Psychiatrist discussing his submission of correspondence for the re-evaluation, Ms. Morik, the case manager, lied to the psychiatrist, Dr. Jonathan Wachtel and stated bluntly that S.F. would remain at the Shefa School.

22. Ms. Morik also acknowledged the appropriateness of the Shefa School, but only insisted on a change due to the terms of the Settlement Agreement.

23. Ultimately the Board recommended touring the Community School, the Banyan School and the Craig School.

24. The Plaintiffs, upon investigation, heard wonderful reports about the Craig School and ensured that the application was immediately completed (despite claims by Ms. Morik, she never submitted any documentation to any of the private schools to complete an application), and the Craig School rejected S.F. due to her behavioral concerns.

25. Plaintiffs then toured the Community School, and immediately documented why it was clearly inappropriate for S.F. At the Due Process hearing, Ms. Morik conceded that she agreed that the Community School was inappropriate, and though she did not agree with all of Mr. A.F.'s points, she did agree that it should not be pursued.  She also testified that she did not feel it necessary to contact Mr. A.F. and explain her thoughts on the matter.

26. Mr. A.F. toured the Banyan School and indicated that it also seemed like a poor fit. Initially, Banyan asked for S.F. to attend, but due to the end of the school year ultimately agreed that S.F. would only tour the school if the process moved forward.

27. Ultimately, the Board also suggested the Winston School of Short Hills, but by that time school had concluded for the year, and the Plaintiffs indicated that a zoom meeting would be preferable.

28. After the meeting, the Plaintiffs reviewed all the choices and detailed at length their concerns and rejected the IEP, both for the district program and the out of district programs. In that message, and subsequent ones, the Plaintiffs indicated a willingness to see if any of the programs could work, but required a response to their concerns. The Plaintiffs indicated a willingness to further examine the Winston School, despite their feeling that they had insufficient information about the program, that the school was too far away and that S.F. would be unlikely to have any local peers in that school.

29. After that email, Ms. Morik was off for the summer and case management moved to one Kristine Thielman.

30. Ms. Thielman wrote one email, and the Plaintiffs responded that despite their significant concerns, they would be happy to discuss upon their return from vacation in a week.

31. Ms. Thielman never communicated with the Plaintiffs again.

32. In fact, in August, the director of admissions at Winston left a voicemail with the Plaintiffs indicating that no one would return his calls from the district.

33. Ms. Morik testified that upon receiving the parent concerns it would have been her practice to try to locate additional schools, but as she left for the summer it was not her responsibility.

34. S.F. was never admitted to any out of district school in the State of New Jersey, and the IEP was drafted with only the in district classroom in mind.

35. The Board thus violated its contractual obligations under the settlement agreement.

36. Due to the Board violating its agreement and ignoring its obligations under IDEA and New Jersey law, the Plaintiffs commenced a due process proceeding with OSEP, which was again referred to OAL for adjudication.

37. The IEP was not compliant with the Settlement Agreement requirements, and the proposed in district program would have led to a clear regression on the part of S.F. and was not going to result in any meaningful educational progress.

38. The matter was put before Judge Guerrero and ultimately proceeded to a hearing on February 5 and 7, 2024.

39. Post-Hearing briefs were submitted on April 12, 2024 and Judge Guerero issued a decision on May 29, 2024.  A copy of the Decision is annexed hereto as **Exhibit A**.

40. A copy of the disputed IEP is annexed hereto as **Exhibit B**.

41. A copy of the petition to OSEP for due process is annexed hereto as **Exhibit C.**

42. A copy of the district's answer to OSEP is annexed hereto as **Exhibit D**.

## COUNT ONE (Appeal pursuant to IDEA)

43. The allegations contained in this Complaint are incorporated herein by reference as if fully set forth herein.

44.  Judge Guerrero's decision below was at odds with the evidence and the law.

45. As an initial matter, Judge Guerrero refused to rule on the breach of the settlement agreement, and as such that issue was not part of her decision.  Plaintiff's claims on that matter are thus being litigated in this Court independently.

46. Judge Guerrero found that the in-district program at the Whittier School was appropriate without regard to the actual description of the class that S.F. would be attending.

47. She failed to account for the fact that S.F. would fall behind on both math and reading from her current levels.

48. She also determined that the District's perfunctory counseling would assist with S.F.'s emotional issues and Plaintiffs' concerns about changing schools, despite the lack of any evidence that the counseling would be sufficient for that issue.

49. In fact, Judge Guerrero misinterpreted the testimony of Plaintiffs' witnesses to create an admission that the counseling would be helpful, when the testimony stated directly that it would likely be ineffective.

50. She credited the testimony of the Defendant's witness about the nature of the reading program, even though that witness admitted to having no expertise in the matter, while Plaintiffs' witness, Dr. Schwab testified at length about the distinction between various reading programs, and that this was within his expertise of over 15 years.

51. Similarly, Judge Guererro claimed that because the District would be willing to revisit the IEP after school began that the Plaintiffs were thus not able to point out that the IEP as issued was improper.

52. Similarly, Judge Guerrero ignored various procedural irregularities, contradictory provisions and missing information in the IEP that would have resulted in a more meaningful educational program.

53. Judge Guererro also ignored the fact that the District failed to address the Plaintiffs' concerns and discuss the issues raised by the Plaintiffs, and instead accepted that it was the Plaintiffs' obligation to chase down the District's summer case manager.

54. Judge Guerrero ignored the lack of a behavioral plan, despite the failure of the district to obtain any expert opinion on the need for a behavioral plan, and the Plaintiffs' expert witness establishing the need for a comprehensive behavioral plan.

55. Judge Guerrero ignored the testimony of Mrs. A.F. as to the nature of the actual district classroom and wrongly claimed that it was speculative, when Ms. Mirander confirmed the details complained about.

56. Accordingly, the decision and order of Judge Guerrero should be vacated and reversed.

## COUNT TWO (Breach of the Settlement Agreement)

57. The plaintiff repeats the allegations of this Complaint as if same were set forth at length herein.

58. The parties' prior settlement agreement reads as follows:

> 10. The Parties understand and agree that in Spring 2023, the District shall conduct evaluations of S.F. that it deems necessary in order to determine S.F.'s then-present levels of performance and his continued eligibility for special education, which may include and shall not be limited to a psychological evaluation, social evaluation and educational evaluation. The Parents agree to provide written authorization for such evaluations upon request by the Board. The Board shall develop an IEP for S.F. and convene an IEP meeting by June 1, 2023, to place S.F. in a New Jersey Department of Education approved private school for students with disabilities in New Jersey, effective the first day of school September 2023, and the Board shall become responsible for providing S.F. with a free, appropriate public education in an approved private school for students with disabilities in New Jersey beginning in September 2023 and continuing for the remainder of the 2023-2024 school year. It is understood and agreed that Petitioners shall retain the right to challenge any IEP developed for S.F. by the Board and the Board retains the right to assert any and all defenses in response to any challenges to the IEP that it may develop for S.F. In no event shall any placement other than the District-selected New Jersey Department of Education approved private school for students with disabilities in New Jersey constitute "stay put" during the pendency of any future dispute between the Parties with regard to S.F.'s placement for the period beginning July 1, 2023 through June 30, 2024.

59. The Agreement unambiguously required the District to prepare an IEP for out of district placement at an approved private school for students with disabilities in New Jersey.

60. It is also clear that the District never prepared such a document, and never obtained admission of S.F. into any such school.

61. Ms. Morik admitted that because the Plaintiffs were unhappy with the schools identified, she did not pursue them.

62. Furthermore, the IEP was never created with an out of district placement in mind, but rather with the hope that the District could ignore its obligations and place S.F. back in district.

63. The provision for out of district schools was thrown on as an add-in just to pretend that the District satisfied its obligations.

64. Contrary to arguments by the District, the Plaintiffs cooperated in all respects, and never undertook any obligation to accept any of the District's proposals.

65. The District took too long to complete the process of revising the IEP and only then decided to look for schools, which resulted in the process not being complete by the end of the school year.

66. It was the District's obligation to commence its work on the matter in order to satisfy its obligations.

67. The District thus breached its obligations under the Settlement Agreement and S.F. and the Plaintiffs have been damaged by the breach.

68. The Plaintiffs are thus entitled to damages.

WHEREFORE, Plaintiff seeks judgment against the defendant Teaneck Board of Education in their favor as follows:

A. Reversing the findings of the New Jersey Office of Administrative Law, and finding that the Plaintiffs are entitled to reimbursement for the unilateral placement of their child at the Shefa School along with transportation costs;

B. Awarding Plaintiff the costs and disbursements of this action, including reasonable counsel fees, costs and reimbursements of expenses, including expert fees, in amounts to be determined by the Court;

C. Awarding prejudgment interest; and

D. Granting such other and further relief as is just and proper.

**THE LAW OFFICE OF AVRAM E. FRISCH LLC**

Hackensack, New Jersey
Dated: August 22, 2024

  **/s/ Avram E. Frisch**

Avram E. Frisch, Esq.
1 University Plaza, Suite 119
Hackensack, NJ 07601
201-289-5352
frischa@avifrischlaw.com
*Attorney for Plaintiff*

**CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

Pursuant to Local rule 11.2, the undersigned certifies that to the best of his knowledge, the within matter in controversy is not the subject of any other action pending in any other Court or of a pending arbitration proceeding nor is any action or arbitration contemplated nor are other parties required to be joined in this action.

Hackensack, New Jersey
Dated: August 22, 2024

/s/ Avram E. Frisch
AVRAM E. FRISCH, ESQ.
Attorney for Plaintiff